**SUMMONS**

# SERVE

E-FILED | 11/13/2023 5:04 PM
CC-02-2023-C-453
Berkeley County Circuit Clerk
Michelle R. Schoppert

IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

**Bristol Springs Custom Homes, LLC v. Argo Group US, Inc**

Service Type:    Secretary of State - Certified - Including Copy Fee

NOTICE TO:    Argo Group US, Inc, 251 Little Falls Drive, Wilmington, DE 19808

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

George Sidiropolis, 1140 MAIN ST STE 4, WHEELING, WV 26003

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| 11/13/2023 5:04:45 PM | /s/ Michelle R. Schoppert | By: _Dhanoa J. Borden_ |
|---|---|---|
| Date | Clerk | Deputy Clerk 11-14-2023 |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to _____ , a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

_____          _____
Date                    Server's Signature

**EXHIBIT**

**A**

E-FILED | 11/13/2023 5:04 PM
CC-02-2023-C-453
Berkeley County Circuit Clerk
Michelle R. Schoppert

## IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

|  |  |  |
|---|---|---|
| **BRISTOL SPRINGS CUSTOM** | * | |
| **HOMES, LLC;** | * | |
| | * | |
| Plaintiff. | * | |
| | * | |
| v. | * | Civil Action No.: |
| | * | Hon. Judge: |
| **ARGO GROUP US, Inc.,** | * | |
| **COLONY INSURANCE CO.,** | * | |
| | * | |
| Defendants. | * | |

---

### COMPLAINT

---

**NOW COMES**, your plaintiff, Bristol Springs Custom Homes, LLC, by and through its undersigned counsel, Flanigan Legal, PLLC, Sheehan & Associates, PLLC, and Amore Law, PLLLC, and for their Complaint against the defendants The Argo Group US, Inc., and Colony Insurance Company, state as allege as follows:

1.     Bristol Springs Custom Homes, LLC is a West Virginia limited liability company that is registered to do business in West Virginia and licensed to conduct general contracting work.  Bristol Springs Custom Homes, LLC has its principal office address of Anacostia Lane, Hedgesville, West Virginia 25427.

2.     The Argo Group US, Inc., is a foreign corporation that is not registered to do business in West Virgina and is not licensed to conduct the business of insurance claims adjusting in the State of West Virginia.

3.     The Argo Group US, Inc. is a Delaware Corporation and has a service of process address listed with the Delaware Secretary of State c/o Corporation

Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808 and a principal office address of 711 Broadway St Ste 400 San Antonio, TX, 78215-1816.

4.      Colony Insurance Company is a foreign corporation that is not registered to do business in West Virgnia and is not licensed to conduct the business of insurance claims adjusting in the State of West Virginia.

5.      Colony Insurance Company is a Virginia Corporation and has a service of process address listed with the Delaware Secretary of State c/o Corporation Service Company, 100 Shockoe Slip Fl 2, Richmond, VA 23219-4100 and a principal office address of 225 W. Washington St., Fl 24, Chicago, IL 60606-3560.

6.      At all relevant times, Dawn Larson was the adjuster responsible for claims decisions made in reference to Bristol Springs Custom Homes, LLC's claim for insurance proceeds.

7.      Dawn Larson is an employee of the Argo Group US, Inc. and a Senior Technical Claim Specialist responsible for adjusting the subject Colony Insurance Company claim.

8.      At all relevant times, Bristol Springs Custom Homes, LLC, was insured by a commercial general liability policy (sometimes referred to as "CGL policy") procured from Colony Insurance Company effective from November 15, 2020 until November 15, 2021.

9.      The appliable CGL policy bore policy number 600 GL 0032310-01.

10.     The applicable claim file number is L-099-1037477.

2

11.     The location of the loss is 6757 Timber Ridge Rd., Berkeley Springs, West Virginia 25411.

12.     At all relevant time, Dawn Larson was acting as an agent, employee and Senior Technical Claim Specialist with defendants Argo Group US, Inc., and/or Colony Insurance Company.

13.     The Circuit Court of Morgan County, West Virginia has subject matter jurisdiction over the contract of insurance which insures property located at 10745 Back Creek Valley Rd., Hedgesville, West Virginia 25427-3081.

14.     The Circuit Court of Morgan County, West Virginia has subject matter jurisdiction over the case.

15.     The Circuit Court of Morgan County, West Virginia may properly exercise jurisdiction over the parties to this action.

16.     The Circuit Court of Morgan County, West Virginia is a proper venue for this action.

17.     The Circuit Court of Morgan County is capable of timely adjudicating this case pursuant to 28 U.S.C. § 1334(c)(2).

18.     At all times material and relevant, Bristol Springs Custom Homes, LLC was insured by a policy of commercial general liability insurance issued by Colony Insurance Company that bore policy number 600 GL 0032310-01.

## THE CLAIM

19.     On November 29, 2021, a civil Complaint was filed in the Circuit Court of Morgan County, West Virginia, styled *William H. Ritter, III, and Donna Joan*

3

*Ritter v. Bristol Springs Custom Homes, LLC*, CC-33-2021-C-72 (hereinafter sometimes referred to as the "underlying Complaint").

20.    The underlying Complaint was filed and timely adjudicated in the Circuit Court of Morgan County.

21.    The civil action filed in the Circuit Court of Morgan County, West Virginia, styled *William H. Ritter, III, and Donna Joan Ritter v. Bristol Springs Custom Homes, LLC*, CC-33-2021-C-72, created a venue to resolve any dispute concerning coverage under the insurance policy along with the allegations of the underlying Complaint. *Christian v. Sizemore*, 181 W. Va. 628, 383 S.E.2d 810 (1989)(declaratory judgment claim could be brought in original personal injury suit rather than by separate action).

22.    The underlying Complaint made detailed factual allegations regarding the alleged defective construction and completion of the Ritter family's home.

23.    The allegations made in the underlying complaint are comparable to the allegations made in *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W. Va. 470, 745 S.E.2d 508 (2013)( Cherrington alleged "property damage" as a result of the allegedly defective construction and completion of her home causing an uneven concrete floor on the home's lower level; roof leaking that has damaged the ceiling, walls, and chimney joint; wood components that directly touch the soil; settlement that allegedly has produced a sagging support beam and numerous cracks in the home's walls and partitions; and various other items requiring repair, including systems for water diversion, roof seams, flashing, caulking, and paint).

4

24.    As either allegedly defective work, itself, or as a direct consequence thereof, the Ritters' Complaint identified defects for which they sought repair and recompense and included an extensive list of allegedly damaged items in their home resulting from the allegedly defective construction and completed work, including but not necessarily limited to:

(a) "The drip edge was not installed in accordance with the W.Va. residential building code adopted under the West Virginia Code of State Regulations, WV CSR §§87-4-1, et seq." ¶14(a) of the underlying Complaint;

(b) defective installation of the wood-burning fireplace, including "The firebox has not been installed in accordance with the manufacturer's instruction. The outlet for the blower fans was not installed or wired. The insulation shield had not been installed and was sitting on the hearth. There was a screw missing from the flu pipe where it leaves the firebox. Moreover, the chimney was not weather-tight and water was leaking in. ¶14(b) of the underlying Complaint; and

(c) "The wiring from the well pump to the house had not been installed in accordance with the W.Va. residential building code adopted under the West Virginia Code of State Regulations, WV CSR §§87-4-1, et seq." ¶14(c) of the underlying Complaint.

(d) The foundation walls had not been water-proofed as required by the residential building code in effect in West Virginia for a conditioned crawl space that would house the mechanical equipment for the house. ¶18(a) of the underlying Complaint.

(e) The subcontractor / trades rough-in of the plumbing and HVAC had not been completed as required by the Contract for the release and payment Draw 4. ¶18(b) of the underlying Complaint.

(f) The installation of the front door and garage doors had not been completed as required by the Contract for the release and payment Draw 4. ¶18(c) of the underlying Complaint.

(g) Windows that had been installed by the [underlying] Defendant Bristol Springs were cracked and need to be replaced. ¶18(d) of the underlying Complaint.

5

(h) The back porch is defective for the reason that it holds water, and the water drains toward the house. ¶18(e) of the underlying Complaint.

(i) The septic tank and drainfield have not been installed. ¶18(f) of the underlying Complaint.

25.    The Complaint alleged negligence on the part of Bristol Springs Custom Homes and that the work was generally "substandard" and "defective."    ¶17 of the underlying Complaint.

26.    The damages allegedly incurred by the Ritter family during the construction of their home and the actions giving rise thereto were not within the contemplation of Bristol Springs Custom Homes, LLC when it hired the subcontractors alleged to have performed most of the defective work.

27.    A causal connection existed between the allegedly defective workmanship and the damages allegedly suffered by the Ritter family.

28.    Bristol Springs Custom Homes, LLC timely delivered a copy of the Complaint to Colony Insurance Company who assigned the claim file number L-099-1037477.

29.    On February 16, 2022, Dawn Larson, Senior Technical Claims Specialist for the defendants, the Argo Group US, Inc., and Colony Insurance Company, asserted a full Reservation of Rights under Colony Insurance Company Policy 600 GL 0032310-01.

30.    The Reservation of Rights letter ignores well settled West Virginia law that that (a) defective workmanship constitutes an "occurrence" under a home builder's CGL policy and (b) alleged defects in construction are "property

6

damage." *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W. Va. 470, 745 S.E.2d 508 (2013).

31.    The Commercial General Liability policy at issue in the *Cherrington* case utilizes a substantially similar, if not identical, Insurance Service Office Commercial General Liability Coverage Form as Colony Insurance Company Policy 600 GL 0032310-01.

32.    For example, Colony Insurance Company Policy 600 GL 0032310-01 defines "Occurrence" to mean an "accident including continuous or repeated exposure to substantially the same general harmful conditions."

33.    Similarly, the court in *Cherrington* observed that, under the applicable CGL policy, an "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions" but that the term "accident" was not defined.

34.    The court in *Cherrington* then defined the term "accident," to mean "circumstances giving rise to the claimed damages or injuries must not have been 'deliberate, intentional, expected, desired, or foreseen' by the insured." *citing* Syl. pt. 1, *Columbia Casualty Co. v. Westfield Ins. Co.,* 217 W. Va. 250, 617 S.E.2d 797 (2005).

35.    The court in *Cherrington* noted that it defied common sense to find that a home builder "deliberately sabotaged the very same construction project it worked so diligently to obtain at the risk of jeopardizing its professional name and business reputation" and therefore the damages incurred by Ms. Cherrington during the construction and completion of her home, or the

actions giving rise thereto, were not within the contemplation of the home builder when it hired the subcontractors alleged to have performed most of the defective work.

36.    The court in *Cherrington* also noted failing to recognize defective work of subcontractors as an "occurrence" was absurd because it directly contradicts the CGL policy's "Exclusion l" which provides coverage for work provided by subcontractors.

37.    Identical language excepting from the "Damage to your Work" exclusion exists in the Bristol Springs Custom Homes CGL Policy.

38.    The operative language reads, "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

39.    Again, the February 16, 2022 Reservation of Rights letter sent by Dawn Larson on behalf of the defendants ignored the court's opinion in *Cherrington* regarding Exclusion L.

40.    A comparable analysis of *Cherrington* in relation to the February 16, 2022 Reservation of Rights letter demonstrates that the defendants ignored the court's opinion in *Cherrington* as it relates to both Exclusion m. "Damage to Impaired Property or Property Not Physically Injured"

41.    Defendants attempted to assert exclusions which were clearly inapplicable under the circumstances and contrary to well settled West Virginia law.

42.    No real effort was made by the defendant(s) to delineate what claims defendant(s) believes were covered and what claims defendant(s) believed are not covered under the policy.

43.    Defendant(s) attempted to assert frivolous coverage defenses in a concerted effort to avoid paying clearly covered losses.

44.    Colony Insurance Company Policy 600 GL 0032310-01 includes an endorsement for Designated Construction Project(s) which designates "all projects during the policy period."

45.    Bristol Springs Custom Homes's Answer to the underlying Complaint denied the allegations of defective workmanship made by the Ritter family.

46.    As part of Bristol Springs Custom Homes defense of the allegations of defective workmanship, the defense retained the services of James A. Amenta, Amenta & Sons General Contractors.

47.    Mr. Amenta's expert opinion was as "a Licensed General Contractor since 1998, my judgement of the quality of work and project management was exceptional on this project."

48.    Mr. Amenta's expert report challenged the findings of the Ritter family's expert witness, Mohamed Hassan, PhD, PE, president of Hassan Consulting Group, LLC.

49.    The Ritter family's expert witness, Mohamed Hassan, PhD, PE, concluded "that the "General Contractor (Bristol Springs Custom Homes, LLC) has failed to adequately manage the construction project causing poor quality of workmanship throughout the project."

9

50.    This is precisely the kind of allegation that is necessary for a finding of coverage.  Cf *State ex rel. Nationwide Mut. Ins. Co. v. Wilson*, 236 W. Va. 228, 237, 778 S.E.2d 677, 686 (2015)(denying coverage where there is neither a claim for vicarious liability  for misconduct of a subcontractor nor a claim that general contractor negligently supervised the subcontractors' work on the house).

51.    Mr. Hassan further concluded that Bristol Springs Custom Homes, LLC was "inefficient and ineffective in managing the construction work causing very low productivity of his work force".

52.    Defendants the Argo Group US, Inc., and Colony Insurance Company refused to make meaningful settlement offers to avoid a trial or the risk of a judgment being imposed against Bristol Springs Custom Homes, LLC.

53.    After nearly two long years of litigation a jury trial in the case of *William H. Ritter, III, and Donna Joan Ritter v. Bristol Springs Custom Homes, LLC*, Civil Action No.: CC-33-2021-C-72 commenced in the Circuit Court of Morgan County, West Virginia.

54.    The jury was instructed *inter alia* "[i]n order to establish negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. In this case, the Defendant Bristol Springs Custom Homes, LLC had a duty to the Ritters to perform its work in workmanlike manner, and to build in accordance with the standard of care of a reasonably skilled and competent builder and to select competent subcontractors, and to manage and supervise the work of the subcontractors chosen by Bristol Springs."

55.    The jury deliberated and returned a verdict which states *in pertinent part* "[w]e find that Bristol Springs Custom Homes, LLC was negligent in performing its work on in managing the work for the Ritters" and assessed damages in the amount of $325,000.00.

56.    Defendant Colony Insurance Company has refused to pay the judgment, in whole or in part.

57.    Even after the entry of judgment, defendant Colony Insurance Company has refused to take a clear position regarding what is and what is not a covered loss under the Colony Insurance Company Policy 600 GL 0032310-01.

58.    "Coverage disputes are delicate and serious matters. The primary duty of the claim representative is to deliver the promise to pay. Therefore, the claim representative's chief task is to seek and find coverage, not to seek and find coverage controversies or to deny or dispute claims." AIC-3 (Associate in Claims) textbook, *The Claims Environment* Markham, First Edition, 1993, p. 13.

59.    Rather than searching for a factual basis for coverage, Defendants the Argo Group US, Inc., and Colony Insurance Company searched for a reason to deny the claim of Bristol Springs Custom Homes, LLC.

60.    Following the trial, Bristol Springs Custom Homes was faced with the imminent enforcement of a civil judgment.

11

61.    Because the Argo Group US, Inc. and Colony Insurance Company did not honor the terms of the insurance contract, Bristol Springs Custom Homes, LLC has been forced into bankruptcy.

62.    The Argo Group US, Inc. and Colony Insurance Company owed Bristol Springs Custom Homes a duty of good faith and fair dealing separate from the duties under the insurance contract and those arising from statute, regulation, or case law.

63.    The Argo Group US, Inc. and Colony Insurance Company duty of good faith and fair dealing is affirmative and unconditional.

64.    The Argo Group US, Inc. and Colony Insurance Company internal claim guidelines should acknowledge this duty and give guidance on how to deliver the required level of service.

65.    The Argo Group US, Inc. and Colony Insurance Company know that undermining first party policy benefits carry the risk of increasing the insured's emotional and financial distress.

66.    That is all to say, when an insured purchases a contract of insurance, they buy insurance—not a lot of vexatious, time-consuming, expensive litigation with their insurer.  *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W. Va. 323, 329, 352 S.E.2d 73, 79 (1986)(emphasis added).

67.    The Argo Group US, Inc. and Colony Insurance Company efforts to avoid paying the jury verdict are unmerited.

68.    The Argo Group US, Inc. and Colony Insurance Company knows that the claim representative's chief tasks is to investigate, evaluate, and resolve the claim.

69.    When an insured purchases insurance, part of what it pays for is a reasonable and even-handed investigation.

70.    It is the duty and responsibility of the insurer to investigate both liability and damages.

71.    It is the insured's responsibility to cooperate with the investigation, not to undertake the investigation or incur the cost.

72.    This duty to investigate is central to proper claim handling.

73.    Industry standards include this obligation and are clearly detailed in the AIC-33 (Associate in Claims) textbook, "The Claims Environment" (Markham, First Edition, 1993, p. 249) where it states, "A thorough investigation is the foundation of good faith claim handling.  Claim representatives must conduct a prompt and objective investigation, using the right personnel and collecting all relevant evidence.  Investigation should continue as long as new facts develop or become available."

74.    "Determining coverage may be very simple or extremely complicated depending on the specific facts of the case.  An investigation must often be undertaken to fully develop the facts needed to determine coverage.  Good faith claim practices require that this investigation be objective, thorough, and timely." AIC-33 (Associate in Claims) textbook, "The Claims Environment" (Markham, First Edition, 1993, p. 29).

75.   The AIC 33 textbook, "Aggressive Good Faith and Successful Claims Handling" (Rokes, First Edition, 1987) discusses the failure to conduct a proper investigation and states:

> Where the insurer fails to investigate the case properly, however, there is no question that the insurer is in breach of contract. Further, there is no question that the insurer has been negligent by omitting to conduct a proper investigation, one of the responsibilities under the contract. The right to recover for breach of contract or for the tort of negligence would seem to be apparent. Whether the failure to investigate constitutes an extraordinary showing of disingenuous or dishonest failure to carry out a contract is certainly a question of fact. It certainly demonstrates the existence of a nebulous threshold between negligence and what is considered to be "bad faith."

## Count One
## Breach of Contract

76.   The plaintiff incorporate each and every paragraph of their Complaint as if fully restated herein verbatim.

77.   The plaintiff paid to the defendant, Colony Insurance Company, policy premiums in consideration for Commercial General Liability insurance coverage.

78.   Defendant, Colony Insurance Company, in consideration for said premium did issue to the plaintiff a policy of insurance with a policy number of 600 GL 0032310-01 effective November 15, 2020 until November 15, 2021.

79.   The parties to this suit have a contract for insurance which provided coverage to the plaintiff at the time of the loss alleged in a civil Complaint was filed in the Circuit Court of Morgan County, West Virginia, styled *William H. Ritter, III, and Donna Joan Ritter  v. Bristol Springs Custom Homes, LLC*, CC-33-2021-C-72 ("the underlying Complaint").

14

80.    The plaintiff suffered a covered loss under the subject insurance contract.

81.    The plaintiff have complied with all terms and conditions of the insurance contract.

82.    Defendant, Colony Insurance Company, failed and/or refused to provide the insurance coverage that it contracted for with the plaintiff and is in breach of the subject insurance contract.

83.    Defendant The Argo Group US, Inc., by and through its agent, adjuster and employee, Dawn Larson, Senior Technical Claims Specialist, substantially encouraged and assisted Colony Insurance Company regarding its investigation, claims handling, and coverage decision(s).

84.    Defendants, Argo Group US and Colony Insurance Company, failed to take reasonable and necessary measures to investigate the loss.

85.    The duties of good faith and fair dealing are embedded within the industry and are taught and accepted as claim handling industry standards.

86.    These industry standards require an insurer to do nothing to injure the rights of the insured to receive benefits under the policy.

87.    Knowing and following industry standards is critical to fair claim practices.

88.    An insurer must: (a) Adopt and implement reasonable standards for handling claims; (b) Give at least equal consideration to the insured's interests; (c) Assist the insured in presenting the claim; (d) Adequately and promptly investigate a claim; (e)Respond timely to letters and phone calls; (f) Adjust the claim (either pay it or deny it) within a reasonably prompt time; (g) Attempt in good faith to effectuate prompt, fair and equitable settlement of  claims, where

liability is reasonably clear; (h) Attempt to find a basis to pay the claim rather than find reasons to deny; (i) Timely pay all undisputed amounts owed under the policy; (j) Disclose all relevant coverages, conditions and restrictions under the policy; (k) Provide in writing a detailed reason for denying the claim specifying each contract term or provision upon which it relies; (l) The insurance company must interpret its policies reasonably, pursuant to the well-recognized insurance industry rules for insurance policy construction, which include the following: exclusions are to be interpreted narrowly; and insuring agreements are to be interpreted broadly; (m) Know and be in compliance with those laws and regulations that impact  claims to the appropriate state, and treat policyholders consistent with requirements of the law; and (n) Deal fairly and be completely honest with the insured.

89.    These generally accepted claim handling principles or insurance industry standards are well known within the industry and they are taught at many claim schools.

90.    These principles or insurance industry standards are often written within procedural and claim handling guides and found in numerous publications including industry-sponsored educational textbooks.  Industry standards include this obligation and are clearly detailed in the AIC-33 (Associate in Claims) textbook, "The Claims Environment" (Markham, First Edition, 1993, p12) where it states, in part, "claims representatives should have expert knowledge of insurance policy coverages, the law, and determination of damages."

16

91.    Industry standards require claim handlers to know and comply with applicable law and regulations that impact claim handling and treat policyholders in a manner consistent with requirements of the law.

92.    Defendants the Argo Group US, Inc. and Colony Insurance Company have deliberately ignored well settled West Virginia law and/or negligently failed to understand and apply well settled West Virginia law in their investigation of the instant claim, coverage decision(s) and claim handling.

93.    Defendants the Argo Group US, Inc. and Colony Insurance Company deliberately ignored the policyholder's requests to protect Bristol Springs Custom Homes, LLC from the risk of a judgment, failed to timely resolve the claim, allowed a jury trial to commence without ever making a reasonable offer of settlement and after a verdict was entered against Bristol Springs Custom Homes, LLC, defendant Colony Insurance Company has refused to pay the judgment.

94.    Defendant Colony Insurance Company breached the contract of insurance by failing to exercise good faith and deal fairly with its policyholder.

95.    Defendant Colony Insurance Company breached the contract of insurance of refusing to pay a covered loss.

96.    Defendant Colony Insurance Company breached the contract of insurance by exposing Bristol Springs Custom Homes, LLC to a jury verdict.

97.    Defendant Colony Insurance Company breached the contract of insurance by refusing to settle with the Ritter family and pay the jury verdict in a timely

manner to avoid Bristol Springs Custom Homes, LLC from being forced to file bankruptcy.

98.    Defendant Argo Group US, Inc., by and through its agent employee Dawn Larson, tortiously interfered with the insurance contract between Colony Insurance Company and Bristol Springs Custom Homes, LLC.

99.    Defendant Colony Insurance Company's breach has caused the plaintiff injury and/or damages including, but not limited to damage to Bristol Springs Custom Homes, LLC's reputation, loss of insurance policy proceeds to satisfy judgment and/or to settle the claim, economic loss, attorney's fees, litigation costs, annoyance, inconvenience, and other consequential losses for which may include the loss of business and/or customers, all of which demand compensation.

## COUNT TWO

### Violation of the UTPA and Common Law Bad Faith

100.    The plaintiff incorporates each and every paragraph of its Complaint as if fully restated herein verbatim.

101.    The defendants, the Argo Group, LLC and Colony Insurance Company, engaged in unfair claim settlement practices in violation of West Virginia Code § 33-11-4(a) in at least the following particulars:

    a.    Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

    b.    Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

c.    Refusing to pay claims without conducting a reasonable investigation based upon all available information;

d.    Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

e.    Compelling insureds to institute litigation to recover amounts due on an insurance policy by failing to make any offer of settlement prior to litigation;

f.    Failing to promptly settle claims, where liability has become clear requiring the plaintiffs to file suit to collect monies due to them pursuant to the insurance policy; and/or

g.    Other violations hereinafter discovered.

102.  The acts and omissions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company violated various provisions of Title 114, Nationwide of the Legislative Rules of the Insurance Commission of the State of West Virginia.

103.  In addition to the foregoing, the acts and/or omissions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company, Nationwide, in the handling of the plaintiffs' first-party claims were in breach of the covenant of good faith and fair dealing and amount to common law bad faith against the plaintiff.

104.  The acts of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company, as described above, were intentionally undertaken by it in a willful, wanton, and/or reckless manner.

105.  All of the acts and omissions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company, by and through its agents, representatives

and employees, were committed with such frequency as to indicate a general business practice, where required by law.

106.  The acts and omissions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company, by and through its agents, representatives, and employees, in the handling of the claims of the plaintiff were intentional, willful, and outrageous in character, and were done in bad faith without regard to the rights of the plaintiff.

107.  The acts and omissions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company, by and through its agents, representatives, and employees, caused the plaintiff to sustain severe emotional distress, mental anguish, inconvenience, annoyance, embarrassment, and other general damages.

108.  The acts and omissions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company, by and through its agents, representatives, and employees, caused the plaintiff to incur substantial costs, expenses, economic losses, and attorney's fees.

109.  The actions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company, in the handling of the plaintiff's claims were done willfully, maliciously, and with careless disregard for the rights of the plaintiff.

110.  The acts and omissions of the defendant, Nationwide, by and through its agents, representatives, and employees, were so outrageous that the plaintiff is entitled to recover punitive damages from the defendant in order to punish the

defendant and to deter them, and other insurance companies, from engaging in similar conduct in the future.

## **DAMAGES**

111.  The acts and omissions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company by and through their agents, representatives, and employees, caused the plaintiff to suffer reputational damage, economic harm, annoyance and inconvenience.

112.  The acts and omissions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company by and through agents, representatives, and employees, including Dawn Larson, caused the plaintiff to sustain other general damages.

113.  The acts and omissions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company, by and through its agents, representatives, and employees, including defendant Dawn Larson, caused the plaintiffs to incur substantial costs, expenses, economic losses, and attorney's fees.

114. The actions of defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company, in the handling of the plaintiff's claims were done willfully, maliciously, and with careless disregard for the rights of the plaintiffs.

115.  The acts and omissions of the defendant(s) the Argo Group US, Inc. and/or Colony Insurance Company, by and through its agents, representatives, and employees, were so outrageous that the plaintiffs are entitled to recover punitive damages from the defendant in order to punish the defendant and to deter it, and other insurance companies, from engaging in similar conduct in the future.

**WHEREFORE**, the plaintiff, Bristol Springs Custom Homes, LLC hereby demands judgment against the defendants the Argo Group US, Inc. and/or Colony Insurance Company, for all consequential damages caused by defendants, including, but not limited to, attorney's fees and costs, annoyance and inconvenience, damage to reputation, economic harm, interest, and other losses; for compensatory damages and punitive damages against the defendants in an amount in excess of the jurisdictional threshold of this Court and in an amount sufficient to fully compensate the plaintiffs for their injuries and damages and punish and/or deter the defendant for its conduct, respectfully; and for such additional favorable relief as the Court deems just and appropriate.

### A JURY TRIAL IS DEMANDED ON ALL ISSUES.

Respectfully submitted,
**Bristol Springs Custom Homes, LLC**,
plaintiff,

By: ***/s/ George N. Sidiropolis***
George N. Sidiropolis, Esq. (#10391)
**Flanigan Legal, PLLC**
1140 Main Street, 4th Floor
Wheeling, WV 26003
Phone: (304) 233-7766
george@flaniganlegal.com


***/s/ Martin P. Sheehan***
 Martin P. Sheehan, Esq. (#4812)
**Sheehan & Associates, PLLC**
1140 Main Street, Suite 333
Wheeling, WV 26003
Phone: (304) 232-1064
Fax: (304) 232-1066
martin@msheehanlaw.net

***/s/ Aaron C. Amore***
Aaron C. Amore, Esq. (#6455)
**Amore Law, PLLC**
206 West Liberty Street
Charles Town WV, 25414
aaron@amorelaw.com